NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
RACHEL N. AGRESS (Cal. Bar No. 281703)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0487
    Facsimile: (213) 894-6269
    E-mail:   rachel.agress@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-00072-JAK |
|---|---|
| Plaintiff, | [PROPOSED] ORDER SETTING FORTH FACTUAL FINDINGS PURSUANT TO THE CARES ACT |
| v. | |
| ANGEL PHILIP ANGULO, JR., aka "Bullet," | |
| Defendant. | |

    The Court, having read and considered the government's ex parte application for an order setting forth factual findings regarding the necessity of proceeding by video teleconference in this case, hereby issues the following factual findings:

    (1) On March 13, 2020, the President of the United States issued a proclamation declaring a National Emergency in response to the COVID-19 (Coronavirus Disease) pandemic.

    (2) The Governor of the State of California declared a Proclamation of a State of Emergency to exist in California on March

1

4, 2020.  Health Officers from Los Angeles, Riverside, Orange, San Bernardino, Santa Barbara, San Luis Obispo, and Ventura Counties subsequently issued local emergency orders and proclamations related to public gatherings.

(3)  To date, hundreds of thousands of people within the Central District of California have been confirmed to be infected with COVID-19 and the number of those infected continues to rise, causing an emergency pandemic.

(4)  In their continuing guidance, the Centers for Disease Control and Prevention and other public health authorities have suggested the public avoid social gatherings in groups of more than 10 people and practice physical distancing (within about six feet) between individuals to potentially slow the spread of COVID-19.  The virus is thought to spread mainly from person-to-person contact, and no vaccine currently exists.

(5)  These social distancing guidelines -- which are essential to combatting the virus -- are generally not compatible with holding in-person court hearings.

(6)  On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which authorized the Judicial Conference of the United States to provide authority to Chief District Judges to permit certain criminal proceedings to be conducted by video or telephonic conference.

(7)  Under § 15002(b) of the CARES Act, "if the Judicial Conference of the United States finds that emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID–19) will materially affect the

functioning of either the Federal courts generally or a particular district court of the United States, the chief judge of a district court . . . specifically finds, upon application of the Attorney General or the designee of the Attorney General, or on motion of the judge or justice, that felony pleas under Rule 11 of the Federal Rules of Criminal Procedure and felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in person without seriously jeopardizing public health and safety, and the district judge in a particular case finds for specific reasons that the plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice, the plea or sentencing in that case may be conducted by video teleconference, or by telephone conference if video teleconferencing is not reasonably available."

(8) On March 29, 2020, the Judicial Conference of the United States made the appropriate findings as required under the CARES Act, finding specifically that "emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. § 1601, et seq.) with respect to the Coronavirus Disease 2019 (COVID-19) have materially affected and will materially affect the functioning of the federal courts generally."

(9) On March 29, 2020, the Chief Judge of this District also made the appropriate findings as required under the CARES Act, finding "that felony pleas under Rule 11 of the Federal Rules of Criminal Procedure and felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in person without seriously jeopardizing public health and safety. As a result, if judges in individual cases find, for specific reasons, that felony pleas or sentencings in those cases cannot be further

delayed without serious harm to the interests of justice, judges may, with the consent of the defendant or the juvenile after consultation with counsel, conduct those proceedings by video conference, or by telephonic conference if video conferencing is not reasonably available." On June 26, 2020, the findings and authorizations in the Order of the Chief Judge No. 20-043 were extended by Order of the Chief Judge No. 20-080. C.D. Cal. Order of the Chief Judge No. 20-080, In Re: Coronavirus Public Emergency, Use of Video and Telephonic Conference Technology in Certain Criminal Proceedings, at 1 (June 26, 2020), and further extended on September 23, 2020, in Order of the Chief Judge No. 20-097. C.D. Cal. Order of the Chief Judge No. 20-097, In Re: Coronavirus Public Emergency, Use of Video and Telephonic Conference Technology in Certain Criminal Proceedings, at 1 (September 23, 2020). In this Order, the Court found that "the emergency authority granted under the CARES Act has not been terminated" and, thus, the Court "extend[ed] all findings and authorizations in Order of the Chief Judge No. 20-043 for an additional 90 days unless earlier terminated." Id.

(10) Through this order, I now find that the guilty-plea hearing in this case cannot be further delayed without serious harm to the interests of justice. My specific reasons are as follows:

    a. On March 23, 2020, the Chief Judge of this District activated The Continuity of Operations ("COOP") Plan for the Central District of California, closing courthouses in this district to the public except for hearings on criminal duty matters. The COOP Plan was in effect through and including June 22, 2020.

    b. On May 28, 2020, the Court adopted The Plan for Phased

Resumption of Operations ("Reopening Plan"), outlining three different phases:

    i. Phase 1 began on June 1, 2020.  During this Phase, certain staff were permitted to return to this District's courthouses to prepare for limited in-court hearings.

    ii. Phase 2 began on June 22, 2020.  During this Phase, which remains ongoing, individual judges have the discretion to hold in-court hearings in any criminal matter.  They may also continue to hold hearings by video and telephonic conference.  Nevertheless, judges are not permitted to conduct any jury trials at this time.  Judges also remain unable to hold in-person hearings in most civil matters.

    iii. The final phase of the Reopening Plan, Phase 3, will be implemented at a date to be determined.  During this Phase, jury trials may resume.  As a practical matter, however, this District is unlikely to conduct a substantial number of jury trials -- and reach its former capacity -- until several months after the implementation of Phase 3.

  c.  On April 9, 2020, the Judicial Council of the Ninth Circuit declared a judicial emergency in this District pursuant to 18 U.S.C. § 3174(d).  The Judicial Council declared this emergency because, among other reasons, the Central District of California is one of the busiest judicial districts in the country.

  d.  As described in the report accompanying the Judicial Council's declaration, this District currently ranks 3rd in the Ninth Circuit and 12th nationally in weighted filings, with 692 weighted filings per judgeship for the 12-month period ending

5

December 31, 2019. Overall, the total civil and criminal filings in the District reached 16,890 in 2019. While the judicial emergency has been somewhat alleviated by the recent Senate confirmation of three new judges on September 15, 2020, the district still will continue to carry heavy caseloads, even apart from the backlog due to circumstances surrounding COVID-19.

e. As the Judicial Conference concluded, the exceptionally large number of cases pending in this District represents an emergency. A vacancy on a district court is generally considered an "emergency" if the court's "weighted filings" exceed 600 per judgeship. The Central District of California's weighted filings, 692 per judgeship (61 percent above the Conference standard), are high enough for each Judge's caseload to be deemed an emergency. While the number of pending cases per judge has marginally decreased with the addition of the three recently-confirmed judges, the large number of pending cases will still constitute an emergency.

f. Prior to the Judicial Council declaring the judicial emergency, the number of criminal cases filed by the U.S. Attorney's Office had risen substantially over previous totals. The USAO has represented that the number of AUSAs in the Central District is at an all-time high, and that the USAO has approximately 220 AUSAs to prosecute criminal cases.

g. This District is authorized 27 permanent judgeships and one temporary judgeship, but has seven vacancies. Moreover, seven active district judges are eligible to take senior status or retire immediately.

    h.    The ongoing COVID-19 pandemic will only exacerbate these serious problems. As described in an April 9 Bloomberg article entitled "Short-Benched U.S. Trial Courts Face Post-Pandemic Crisis," districts with high caseloads and a large number of judicial vacancies -- such as this District -- will be challenged to deal with the huge backlog of trials, hearings, sentencings, and other matters once normal operations resume. In an email to Bloomberg commenting on this article, the former Chief Judge of this District agreed that the Central District of California will have a "significant backlog of trials" when normal operations resume. She further expressed that the Judicial Council's recent declaration was "critical for us, given that all ten of our district judge vacancies have been declared judicial emergencies, and that we have an extremely heavy caseload." As stated above, even with the recent confirmation of three judges, seven vacancies remain.

    i.    While individual Judges currently have the discretion to hold in-person hearings in criminal matters, social distancing guidelines remain generally incompatible with in-person hearings. Many parties, including defendants, counsel, and court staff, are also unable or unwilling to attend in-person hearings due to legitimate safety concerns. And transporting detained defendants to these hearings may risk the spread of COVID-19 within detention facilities, and result in defendants being subject to quarantines upon their return to these facilities.

    j.    Given these facts, it is essential that Judges in this

7

1  District resolve as many matters as possible via video
2  teleconference and telephonic hearing.  By holding these
3  hearings now, this District will be in a much better position to
4  work through the backlog of criminal and civil matters when
5  normal operations resume.
6  (11) I therefore conclude that the guilty-plea hearing in this
7  case cannot be further delayed without serious harm to the interests
8  of justice.  If the Court were to delay this hearing until it can be
9  held in-person, it would only add to the enormous backlog of criminal
10 and civil matters facing this Court, and every Judge in this
11 District, when normal operations resume.
12 (12) The defendant consents to proceed with his guilty-plea
13 hearing by video teleconference.  Defendant also understands that,
14 under Federal Rules of Criminal Procedure 32 and 43, as well as the
15 Constitution, he may have the right to be physically present at this
16 hearing.  Defendant understands that right and voluntarily agrees to
17 waive it and to proceed remotely by video teleconference.  Counsel
18 joins in this consent, agreement, and waiver.
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

8

|   |   |
|---|---|
| 1 | (13) Based on the findings above, and my authority under § 15002(b) of the CARES Act, the guilty-plea hearing in this case will be conducted by video teleconference on November 12, 2020 at 12:00 p.m., if at the outset of such hearing, defendant makes a knowing and voluntary waiver of his right to an in-person hearing. |

    (13) Based on the findings above, and my authority under § 15002(b) of the CARES Act, the guilty-plea hearing in this case will be conducted by video teleconference on November 12, 2020 at 12:00 p.m., if at the outset of such hearing, defendant makes a knowing and voluntary waiver of his right to an in-person hearing.

    IT IS SO ORDERED.

_____                    _____
DATE                                              THE HONORABLE JOHN A. KRONSTADT
                                                  UNITED STATES DISTRICT JUDGE

Presented by:

_____
RACHEL N. AGRESS
Assistant United States Attorney